No. 14,179.

|108 191|
|113 574|

CITY OF NEW ORLEANS VS. MRS. MARIE BILGERY ET ALS.

SYLLABUS.

1. Defendant has no right to enjoin the execution of a judgment in a petitory action in favor of the plaintiff which is absolute and unconditional in its terms as to ownership and right of possession, and force plaintiff to await a decision upon unliquidated claims touching matters upon which the defendant had simply reserved his rights.

2. Where the District Court has set aside an injunction which it had granted upon the ground that it was an injunction against the execution of a judgment of the Supreme Court, absolute and unconditional, in its terms, it should refuse an appeal to the party cast and force him to apply to the Supreme Court for relief. When, however, it has, in fact, granted a suspensive appeal, it should not (so long as the order of appeals stand) oust the appellant from his possession secured by his appeal, by placing the property in the hands of a private individual, styled a sequestrator, and enjoining the appellant from acts of possession; particularly, is this the case, where the sheriff had in his hands a writ of possession from the inception of the proceedings.

APPEAL from the Civil District Court, Parish of Orleans—*St. Paul, J.*

The defendants recovered a judgment in the Civil District Court decreeing them, in a petitory action, to be owners and entitled to the possession of certain real estate in the City of New Orleans, with the buildings thereon and all alleys around the same, known as the Second Street Market, together with rents and revenues. The City of New Orleans, defendant, appealed to the Supreme Court. This court rendered the following decree:

"It is therefore ordered, adjudged and decreed, that in so far as the judgment appealed from condemns the defendant for fruits and revenues of the property in question, the same be annulled, avoided and reversed, and that as to such fruits and revenues for the period between May 30, 1894, and October 23, 1897, the demand of the plaintiffs be rejected, and that as to such revenues since October 23, 1897, said demand be rejected as in case of non-suit."

"It is further ordered and adjudged, that in so far as said judgment decrees the plaintiffs to be the lawful owners of the property herein claimed, and entitled to possession thereof, the same is hereby affirmed. It is further ordered, adjudged and decreed, that all legal rights of the city, with respect to taxes upon said property since May, 1873, and with respect to any claim which it may have, arising out of the use made of said property, and of any franchise or privilege in connection therewith, be reserved. It is further ordered that the defendant pay the costs of the appeal." The pleadings and facts in the case will be seen by reference to the report of the case found in Ball *et al.* vs. City of New Orleans (52 Ann. 1550).

On the 7th of May, 1901, the City of New Orleans filed a petition in the Civil Distrirt Court, in which it averred that the plaintiffs in that suit, pretending to act under said judgment, had issued a writ of possession and were seeking to avail themselves of the provisions of said judgment without complying with all of its provisions respecting the payment of its just claims, and, on the contrary, refusing so to do. That the property was liable for the payment of the taxes from 1874 to 1900, inclusive, and that the amount thereof, with interest and penalties, far exceeded the value of the market, which it averred to be twelve thousand dollars. That it had a lien and privilege for said taxes, but that owing to the bad faith of Joseph Bilgery, the ancestor of the defendants, the city had been lulled into the belief that he was the subrogee of and exercising the rights and privileges of one

Joseph Raymond who had, by ordinance, been given the privilege to operate a market upon said property, free from taxation, for a period of twenty-five years, under the terms and conditions stated in the ordinance which was made part of its petition, and that at the end of said period it would revert to and become the property of the city. That the defendants, after surrendering possession of the market to the city in March, 1874, subsequently brought the action in which the said judgment was rendered, were seeking to execute the same without accounting to the city for the taxes due, or complying in any respect with any of the terms of said decree, and especially of the payment of the city of the value of the franchise to operate a market exercised by the defendants. That the defendants were without means and insolvent, and the city feared if they obtained possession of the property, they would sell, transfer or dispose of the same to its irreparable damage and that for the protection of its interests it was necessary that a writ of injunction issue in the premises. It prayed that an injunction issue enjoining the present defendants from executing the writ of possession on the said judgment without paying or accounting to the city for the taxes due it from 1874 to 1900, inclusive, and without accounting to it for the franchise value of said property, or in all respects conforming to the judgment in its entirety, and that they remain enjoined until further order of court. The injunction was ordered to issue and was issued as prayed for. On the 7th of June, the city filed a supplemental and amended petition, in which it averred that in its petition for injunction it had inadvertently alleged that the taxes for the years 1897, 1898, 1899 and 1900, among others, were unpaid; that this allegation as to the taxes for said years was made in error; that they had been paid under an order of the Circuit Court of the United States by the receiver in the cause entitled Arturo del Orto vs. The New Orleans Contracting Co., Ltd., but with this exception it reiterated its former allegations. It further averred that the defendants were without right in the execution of the writ of possession, for the reason that the *alleys Nos. 1 and 2* of said market and the aisles and passage ways between the stalls thereof had been and were still dedicated to public use and benefit of all the inhabitants thereof, and had been continually so used, and not been used for any other purpose since 1873.

That said dedication was made in the following manner, to-wit:

That the lands upon which the Second Street Market and alleys Nos. 1 and 2 connected therewith are situated and the aisles and passageways thereof, were acquired by purchase by Joseph Raymond from the Union National Bank by act before M. T. Ducros, notary public, in New Orleans, dated February 27, 1873; that annexed to said act and forming a part thereof was a plan made by L. H. Pilie, dated February 19, 1873, designated a part of said ground as alleys Nos. 1 and 2. That the said act and plan and resolution of the Board of Directors of the Union National Bank, thereto attached, was intended to be and was a joint dedication by the vendor, the Union National Bank, and the vendee, Joseph Raymond, of the alleys Nos. 1 and 2 to public use forever.

That the title to said streets and alleys still remained in the public; that the public never had been divested thereof; that no divestiture thereof could have been made; the power to alienate property to public use vesting, if anywhere, in the sovereign alone.

That the attempt of the defendants to seize the said property and to take it out of the possession of the city, by whom it is held in trust for the use and benefit of the inhabitants thereof, impairs the obligation of the contract in favor of said inhabitants, made by the vendor and vendee, in the act between the Union National Bank and Joseph Raymond, passed before Ducros in violation of Section 10 of the Constitution of the United States. That said conduct of the defendants also was violative of the 14th amendment of the Constitution of the United States, in that it divests the vested rights of the inhabitants of New Orleans in said alleys, aisles and passageways, and is a taking of their property without due process of law. The city prayed that the writ of injunction be perpetuated. This petition was sworn to by Arthur McGuirk, assistant city attorney. The injunction prayed for was ordered to issue.

In the meantime, on May 31st, on application of the defendants, the city was ruled to show cause, on June 7th, why the injunction granted should not be dissolved for a number of assigned reasons, among them that the affidavit in support thereof was false in the following particulars, among others, viz:

1st.—That it was not true that the judgment was a conditional one. It was, on the contrary, absolute and unconditional and the District Court was without a jurisdiction to enjoin a judgment of the Supreme Court.

2nd.—It was not true that said property was liable, or that the defendants were liable for any taxes thereon.

3rd.—It was not true that the defendant's ancestor, Joseph Bilgery, acted in bad faith, or that the city was in any manner led to believe that he was dealing with said property otherwise than as the absolute owner thereof.

4th.—It was not true that the defendants surrendered the possession of the property to plaintiffs in March, 1874, or at any other time. On the contrary, it was forcibly taken possession of by the city in March, 1874, without right or authority and was still withheld from them.

5th.—It was not true that the defendants, or either of them, were insolvent, or that plaintiff would suffer any injury or damage whatever from their obtaining possession of the property to which the Supreme Court had entitled them to be entitled as lawful owners.

The city was also ruled to show cause, at the same time, why it should not be condemned to pay damages in the sum of five hundred dollars for the wrongful taking out of the injunction.

On the day before the trial of this motion to dissolve, that is to say, on the 6th of June, 1901, the defendants filed an answer to the city's petition for injunction accompanied by a reconventional demand. In the answer they pleaded the general issue, followed by averments substantially those set out in the motion to dissolve. In their reconventional demand they averred that the property known as the Second Street Market was then in the possession of *Luigi del Orto,* as receiver, appointed by the United States Circuit Court in the case entitled Arturo del Orto vs. The New Orleans Contracting Co., Ltd.; that said court had made an order discharging said receiver, which would become effectual on the 7th of June, 1901, when its possession would be relinquished by him; that they (plaintiffs in reconvention) were informed and they therefore averred it was the purpose of the city to take possession of said property as soon as said receiver would relinquish the same, and prevent them from resuming the possession thereof, as they were entitled to, under the judgment of the Supreme Court; that such action on the part of the city would work them an irreparable injury, and that an injunction was necessary to protect them in their rights. They, therefore, prayed that the city, her officers, agents and attorneys, be enjoined and prohibited from taking possession of said market, or in any manner interfering with the

possession thereof by the plaintiffs in reconvention, and that upon trial the injunction be made perpetual.

The District Court, on the same day, "considering the reconventional demand and petition for injunction and affidavit in support of the same," ordered the city to show cause, on June 7th, why an injunction should not issue as prayed for. It further directed that "until further orders of the court, the city should be restrained from taking possession of the Second Street Market or interfering with the posession of W. J. McGeehan, hereinafter named. It then ordered that W. J. McGeehan be and he is hereby appointed to receive and collect the revenues of said market until the further orders of this court."

On the 14th of June the defendants moved to dissolve the injunction granted to the plaintiff upon the filing of the supplemental and amended petition on the same grounds which it had set up in their original motion to dissolve.

The city, on the same day (June 14th), answered the rules to show cause. It asserted the legality and validity of the injunction. It denied that it was seeking to enjoin the judgment of the Supreme Court; it averred that the District Court was acting within its jurisdiction; that the grounds set up in the rule to dissolve were matters of defense and could not be heard, and evidence adduced thereon, at a preliminary stage of the case, but had to be deferred until a trial on the merits; that the motion to dissolve was really a general denial putting at issue both the law and the facts; that the injury to the city would be irreparable if the injunction were dissolved; that the real estate had never been out of the possession of the city; it still had possession; that the receivership in the United States Court affected only the revenues of the market; that part of the real estate, alleys Nos. 1 and 2 and the aisles and passageways of the market were dedicated to public use. It reiterated the allegations made by it in its different pleadings in the case.

The record shows that on the 14th of June, "the rules to dissolve the injunctions of the plaintiff and that to show cause why the injunction prayed for by the defendants should not issue, came up for trial on issues of law, all issues of fact being referred to the merits." That after hearing pleadings and counsel, the court, considering the law to be with the defendants and against the plaintiff, ordered and

decreed that the rules taken out by the defendants be made absolute. It accordingly ordered and decreed that the injunction which issued under the order made by it on the 6th of May, as well as the injunction which issued under the order of the 7th of June, be dissolved and set aside at the costs of the plaintiff. It further ordered and decreed that an injunction issue under the order then made in the answer and reconventional demand of the defendants, and that W. J. McGeehan, previously appointed to collect the revenues of the market in controversy, do turn over all the funds in his hands to the defendants."

The city moved for a new trial on the ground that the judgment rendered was contrary to law and the evidence in this:

1st.—That it was rendered upon a reconventional demand filed by defendants in the cause on the 6th of June, without opportunity being allowed to file an answer to the reconventional demand, and without a hearing on the merits, although the delays allowed by law within which to file an answer to said reconventional demand had not expired.

2nd.—That it was rendered on the trial of a rule *nisi* for a writ of injunction prayed for by defendants in their reconventional demand.

3rd.—That at the date of the filing of said reconventional demand, the court issued an order appointing a judicial sequestrator without bond other than the sheriff, for the property in controversy, although at the date of the order there was outstanding in the hands of the sheriff a writ of possession ordering him to seize and take into his possession the property in controversy.

4th.—That the judgment had not only the effect of dissolving and setting aside the orders of the court of May 6th and June 6th, restraining the execution by the sheriff of the writ of possession, ordering him to seize and take into possession the property in question, but forestalled the execution by the sheriff of the writ of possession by decreeing that the judicial sequestrator appointed by the court on the 6th of June, on the reconventional demand of the defendants filed on that day, should deliver the possession of the property and the revenues thereof, which he may have collected to the defendants is the case.

That the judgment provided for the issuance of an injunction restraining the plaintiffs from in any manner seeking to obtain possession of the property in controversy. That the judgment had the effect of dissolving the orders rendered on May 6th and June 7th for

writs of injunction restraining the sheriff from executing the writs of possession.

The court refused the new trial. On the 17th of June the court granted the city a suspensive appeal to the Supreme Court from the judgment. On the same day, June 17th, an injunction issued enjoining the city from taking possession of the real estate situated at the corner of Dryades and Second streets, known as the Second Street Market, and that it remain so enjoined and restrained until further orders of the court.

On the 21st of June, on motion of defendants, the court ordered that W. J. McGeehan, theretofore appointed as judicial sequestrator of the revenues of the Second Street Market, involved in the suit, deposit weekly all collections of said revenues in the Citizens' Bank of Louisiana, the judicial depositary of the court, to his credit as such sequestrator to be disposed of as the court should direct, and that he make due report of all such collections and deposit.

The writ of possession directed to the sheriff is not in the record.

At the time of the institution of the suit of Ball vs. The City of New Orleans, the revenues of the Second Street Market property and other markets had been farmed out to the New Orleans Contracting Company under a contract ending the.......... day of............

For some reason not disclosed the affairs of that company were placed in the hands of a receiver by the United States Circuit Court in the suit of del Orto vs. The New Orleans Contracting Co., Ltd., the receiver being authorized, among other matters, to collect the rents of the Second Street Market.

This authority was withdrawn on the ........day of............, doubtless for the reason that the contract of the city with the company had terminated on the ..........day of.....................

The effect legally of this withdrawal was to throw the collection of the revenues into the hands of the city, as the *judgment of this court was still unexecuted* and the property was still in the possession of the city.

---

*Arthur McGuirk,* Assistant City Attorney, for Plaintiff, Appellant.

---

*Rouse & Grant,* for Defendants, Appellees.

City vs. Bilgery et als.

The opinion of the court was delivered by

Nicholls, C. J. A simple reading of the judgment of this court in the case of Ball et als. vs. The City of New Orleans, will show that the right of the plaintiffs therein to the ownership and immediate possession of the Second Street Market property, including the alleys connected therewith, was recognized absolutely and unconditionally. Had it been the intention of the court to have postponed the yielding of possession of the property to the plaintiffs by the city to the liquidation and settlement of the rights between the parties as to the taxes and other matters reserved, we would either have remanded the cause for such settlement to be made, or would have, in express terms, made the execution of the judgment conditioned upon a prior liquidation and settlement.

When the mandate of this court was sent to the District Court, there was no legal reason under it which stood in the way of an immediate carrying out of its terms. The District Court should not have granted the injunctions which it did at the instance of the city, and it acted correctly in setting them aside. After setting them aside it should have refused, instead of granting, the city the appeal it solicited as to the execution of the judgment touching possession. Our decree was final in the premises and called for no appeal. Had the city felt aggrieved by such refusal, it could have tested its right to an appeal by application to this court for relief. The effect of the granting by the District Court of a general suspensive appeal has been to prevent the execution of the judgment of this court in the Ball case up to the present time. Our judgment was not self-executing or self-operating. It required an enforcement through a writ of possession, unless possession should be surrendered voluntarily. As matters stand, there is now a writ of possession in the hands of the sheriff, the latter waiting upon the orders of the court in the premises that he should execute it. Had the District Court not granted the appeal it did, matters would have taken a regular legal shape. The injunctions having been set aside, the writ of possession would have been at once executed by the sheriff. As it was the execution was tied up by the appeal and the court attempted to remedy the situation by enjoining the city from taking possession of the property and placing it and its revenues in the possession of a private individual called a sequestrator, thus bringing about a situation of affairs not warranted. The

city was already in possession of the property as it had never been divested or ousted of the same, and this possession was continued by the suspensive appeal granted. Our judgment could not be enforced and carried into execution by a decree of the District Court *proprio vigore*. A decree of the District Court could not be substituted for the execution of a writ of possession by the sheriff. The method of executing judgments is fixed by law. The District Court could not, while granting the city a suspensive appeal, oust it from its existing possession of the property by a decree appointing a judicial sequestrator.

In *Hereford vs. Babin,* 14 Ann. 333, this court held that a party had no right to enjoin the execution of a judgment absolute and unconditional in its terms as to the matter it professed to decide during a litigation as to other matters in controversy reserved by the judgment; that unliquidated claims cannot be pleaded by way of compensation against a judgment. This same principle was recognized in Menguelle vs. Abadie, 45 Ann. 676, and State *ex rel.* Kenner vs. Rost, Judge, 50 Ann. 995. A *fortiori* this cannot be done in respect to matters reserved, which have not yet been brought into litigation. It will be seen that the city, in its petitions for injunction, did not seek to obtain judgment against them. The whole relief asked by it was obstructive and defensive and limited to opposition to the execution of a writ of possession. Its whole claim to injunction rested upon the correctness of the proposition which it declared upon that the judgment of the court made its enforcement by the plaintiffs conditional upon or contingent upon prior liquidation and a settlement between the parties of the matters reserved to the city therein. This claim had no basis to rest upon. In so deciding we practically decide the whole case.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the District Court appealed from, in so far as it sets aside the injunctions which it had granted herein to the City of New Orleans in the matter of the execution of the judgment in the suit of Mrs. J. A. Ball *et al.* vs. The City of New Orleans *et al.,* be and the same is affirmed, but that except as so affirmed the said judgment appealed from be, and the same is hereby annulled, avoided and reversed. Costs of appeal to be borne by the appellees.